AO 91 (REV.5/85) Criminal Complaint AUSA Yasmin N. Best (312) 469-6024

**FILED**
MAR 16 2012
3-16-12
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ABIDEMI AJAYI

**CRIMINAL COMPLAINT**

CASE NUMBER: MAGISTRATE JUDGE NOLAN

UNDER SEAL **12CR0190**

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: Beginning no later than November 27, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, ABIDEMI AJAYI, defendant herein:

> knowingly possessed a forged security of an organization, namely, a check numbered 43138762 in the amount of $344,657.84, issued by Company A on an account held at Bank of America and originally made payable to Company B, with intent to deceive another person or organization, namely JP Morgan Chase;

in violation of Title 18, United States Code, Section 513(a). I further state that I am a Postal Inspector with the Postal Inspection Service, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

X _____
Signature of Complainant
BRETT ERICKSON
Postal Inspector, Postal Inspection Service

Sworn to before me and subscribed in my presence,

March 16, 2012     at     Chicago, Illinois
Date                                        City and State

NAN R. NOLAN, U.S. Magistrate Judge     Nan R. Nolan
Name & Title of Judicial Officer             Signature of Judicial Officer

| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss |
| NORTHERN DISTRICT OF ILLINOIS | ) |

## AFFIDAVIT

I, BRETT ERICKSON, being duly sworn, state as follows:

1. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"), currently assigned to the external crimes and mail and identity theft team for the Chicago Division. I have been employed with the USPIS since February 2007. My duties include, among other things, investigating violations of Title 18, United States Code, Sections 1028 (identification fraud), 1029 (access device fraud), 1341 (mail fraud), 1343 (wire fraud), and 513 (counterfeit securities).

2. This affidavit is submitted in support of a criminal complaint alleging that ABIDEMI AJAYI has violated Title 18, United States Code, Section 513(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging AJAYI with possessing and using a counterfeit security, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, my review of documents and reports, and my conversations with other law enforcement officers, victims, and witnesses.

1

## FACTS SUPPORTING PROBABLE CAUSE

***Background of the investigation***

4. In or about April 2010, a bank fraud investigator from JP Morgan Chase ("Chase") contacted me regarding suspected bank fraud, which led to a loss for Chase of approximately $172,160.52.

5. Specifically, the investigator stated that on or about November 12, 2009, Company A[1] cut Check #43138762 on its Bank of America account to Company B[2] in the amount of $344,657.84. According to the bank fraud investigator, the check was made payable to Company B at a post office box in Dallas.[3]

6. According to the bank fraud investigator, on or about December 11, 2009, Company B informed Company A that its account was past due. Additionally, my review of documents provided by Chase showed that on or about December 15, 2009, Company B provided Company A with a written confirmation notice that Company B never received Check #43138762.

7. According to the bank fraud investigator, Company A then conducted an internal investigation that revealed that Check #43138762 had already been endorsed and

---

[1]As stated by the bank fraud investigator, and as I have learned during the course of my investigation, Company A provides cleaning services and security for high rise buildings and has more than two dozen offices nationwide.

[2] As stated by the bank fraud investigator, and as I have learned during the course of my investigation, Company B provides paper products and cleaning supplies to Company A and other customers.

[3] During an August 2010 interview by USPIS inspectors of Company B representatives, Company B's post office box in Dallas is a lock box controlled by Comerica Bank, and Comerica Bank receives and processes all account receivable payments for Pollock.

deposited. In checking its records, Company A discovered that the front of the deposited check reflected a payee called GR Icon. My review of documents provided by Company A showed that the copy of Check #43138762 maintained in Company A's files showed that the original payee for Check #43138762 was Company B.

8. According to the bank fraud investigator, and as documented in records provided by Chase, on or about February 15, 2006, an individual named Abidemi Ajayi ("AJAYI") opened a Chase business checking account titled in the name of entity GR Icon International. The account, ending in digits 0358, was opened at a Chase branch located at 1934 South State Street in Chicago. On the account opening documents, AJAYI listed himself as the president of the company. Review of the Chase bank account opening information listed the company address as an address in Calumet City, Illinois. My review of Illinois Secretary of State files showed that the Calumet City address is reflected both as the address at which GR Icon was incorporated and the address listed on AJAYI's drivers license.

9. My review of documents provided by Chase also showed that on or about December 16, 2009, Company A's vice president and treasurer submitted a fraud affidavit to Bank of America in which the treasurer affirmed that he did not authorize the alteration of the payee information. In or about August 2010, inspectors from USPIS interviewed Company A's assistant treasurer. During the interview, the assistant treasurer stated that he

had not heard of GR Icon International. Additionally, the assistant treasurer stated that he did not know AJAYI or give him permission to alter and/or negotiate this check.

10. Similarly, in or about August 2010, inspectors from USPIS also interviewed Pollock's chief financial officer. During the interview, the chief financial officer stated that he had not heard of GR Icon International. Additionally, the chief financial officer stated that he did not know AJAYI or give him permission to alter and/or negotiate this check.

### *AJAYI's deposit of check and subsequent withdrawals*

11. According to documents provided by Chase, on or about November 27, 2009, Check #43138762 was deposited into GR Icon's Chase account via ATM at a Chase branch located at 10 South Dearborn Street in Chicago. My review of account statements show that the balance before the deposit was $66.61.

12. According to USPIS interviews with the bank fraud investigator, the Chase debit card issued to AJAYI and the personal identification number ("PIN") issued to AJAYI were used to conduct the transaction. At the time the check was deposited, the check contained the address information from Company A and the payment amount of $344,657.84, and the payee information reflected that the check was to be paid to GR Icon International, at the Calumet City address. According to the bank fraud investigator, AJAYI's debit card and PIN were never reported to Chase as lost, missing, or stolen. According to the Chase bank fraud investigator, AJAYI was the only person issued a debit card and a PIN for the GR Icon account.

13. According to the bank fraud investigator, Chase's Risk Operations placed a hold on the check. According to the bank fraud investigator, Chase monitors average monthly balances on its accounts, and because the amount of the altered check far exceeded the money typically going into the GR Icon account, Chase waited for the check to clear before the account holder could access the funds. The hold on the check was lifted on or about December 8, 2009.

14. My review of documents provided by Chase, as well as still photographs from video cameras at Chase bank locations, shows that at least nine transactions were made between December 9, 2009 and December 12, 2009 on the GR Icon account by AJAYI.

15. Specifically, on or about December 9, 2009, AJAYI cashed GR Icon check #1086, made payable to AJAYI in the amount of $9,600, at the Chase branch located at 1603 Orrington in Evanston. Video surveillance still photos from the transaction show a person who strongly resembles AJAYI conducting the transaction. Additionally, review of an electronic journal report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license, bearing number #A20000170344, was presented to the bank teller and inputted into Chase's system during the withdrawal.

16. On or about December 10, 2009, AJAYI cashed GR Icon check #1088, made payable to AJAYI in the amount of $23,500, at the Chase branch located at 6650 South Stony Island Avenue in Chicago. Video surveillance still photos from the transaction show a person who strongly resembles AJAYI conducting the transaction. Additionally, review of an

electronic journal report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license was presented to the bank teller and inputted into Chase's system during the withdrawal.

17. Later that same day, AJAYI cashed GR Icon check #1089, made payable to AJAYI in the amount of $16,500, at a Chase branch located at 10 South Dearborn, the same branch at which the Company A check was deposited on November 27. Video surveillance still photos from the transaction show a person who strongly resembles AJAYI conducting the transaction. Additionally, review of an electronic journal report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license was presented to the bank teller and inputted into Chase's system during the withdrawal.

18. On or about December 11, 2009, AJAYI cashed GR Icon check #1093, made payable to AJAYI in the amount of $17,000, at the Chase branch located at 1122 North Clark Street in Chicago. Video surveillance still photos from the transaction show a person who strongly resembles AJAYI conducting the transaction. Additionally, review of an electronic journal report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license was presented to the bank teller and inputted into Chase's system during the withdrawal.

19. Immediately after cashing check #1093, AJAYI met with a customer service associate. AJAYI directed a wire transfer in the amount of $53,000 from the GR Icon

account to a third-party TD Bank account in Florida. AJAYI again provided his driver's license during this wire transfer, as recorded in Chase's system.

20. Approximately 40 minutes after the wire transfer, AJAYI cashed GR Icon check #1095, made payable to AJAYI in the amount of $9,500, at the Chase branch located at 6650 South Stony Island, where AJAYI had cashed check #1088 the day before. Video surveillance still photos from the transaction show a person who resembles AJAYI conducting the transaction. Additionally, review of an electronic journal report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license was presented to the bank teller and inputted into Chase's system during the withdrawal.

21. On or about December 12, 2009, AJAYI cashed GR Icon check #1097, made payable to AJAYi in the amount of $9,650, at the Chase branch located at 3714 North Broadway in Chicago. Video surveillance still photos from the transaction show a person who resembles AJAYI conducting the transaction. Additionally, review of an electronic journal report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license was presented to the bank teller and inputted into Chase's system during the withdrawal.

22. Less than 40 minutes later, AJAYI cashed GR Icon check #1098, made payable to AJAYI in the amount of $9,800, at the Chase branch located at 1101 West Lawrence Avenue in Chicago. Video surveillance still photos from the transaction show a person who resembles AJAYI conducting the transaction. Additionally, review of an electronic journal

report for this transaction obtained from Chase reflects that Ajayi's Illinois driver's license was presented to the bank teller and inputted into Chase's system during the withdrawal.

23. In addition to reviewing the electronic journal entries from each transaction described above, in or about July and August 2010, I interviewed each of the Chase bank employees who conducted the transactions, with the exception of the teller who conducted the transaction described in paragraph 18 above. (That teller no longer worked for Chase by the time I conducted witness interviews.) None of the tellers interviewed had specific recollections about AJAYI or the transactions described above. Each of the tellers explained that it is Chase policy to take two forms of identification as verification from the customer, usually a driver's license and debit card for the account, and the information from the identification, such as the driver's license number, is manually keyed into the teller's computer. Each teller also stated that any withdrawal over $5,000 requires a manager to verify the transaction, which includes the manager checking the identification again and reviewing the status of the account from which the withdrawal is being made.

### *Freezing of funds and loss amount*

24. In addition to the above-described transactions, my review of records for GR Icon's bank account obtained from Chase reflected that in December 2009, a number of purchases were made with Ajayi's debit card for the GR Icon account. The transactions, at a variety of retailers like Apple and the Gap, totaled more than $6,700.

25. According to the bank fraud investigator, on or about Friday, December 11, 2009, Company B notified Company A that Company A's payment was past due, and no later than the following Monday (December 14), Company A was able to check its bank software and discover that the payee name on the check had been altered. According to the bank fraud investigator, the funds in the GR Icon account were subsequently frozen and not accessible for withdrawal.

26. With various fees for wire transfers and other purchases, as well as additional checks from the GR Icon account that were made payable to third parties and cashed in December 2009, Chase suffered a total loss of $172,160.52. The $172,497.32 remaining the GR Icon account at the time the fraud was detected was debited by Chase's Risk Operations and placed into its general ledger. Chase returned the entire $344,657.84 from the altered check to Bank of America.

27. In November and December 2009, JP Morgan Chase was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). Additionally, Bank of America was a financial institution, the deposits of which were insured by the FDIC.

### *Conclusion*

28. Based on the foregoing, I submit that the aforementioned evidence establishes that beginning no later than November 27, 2009, AJAYI knowingly possessed a forged security of an organization, namely, a check numbered 43138762 in the amount of

$344,657.84, issued by Company A on an account held at Bank of America and originally made payable to Company B, with intent to deceive another person or organization, namely JP Morgan Chase, in violation of Title 18, United States Code, Section 513(a).

FURTHER AFFIANT SAYETH NOT.

_____
BRETT ERICKSON
Postal Inspector, Postal Inspection Service

SUBSCRIBED AND SWORN to before me on March 16, 2012.

_____
NAN R. NOLAN
United States Magistrate Judge